228 F.Supp.2d 1041 (2002)
Shanae WEATHERSPOON, Plaintiff,
v.
Larry G. MASSANARI, Commissioner of Social Security, Defendant.
No. 4:01CV702 DDN.
United States District Court, E.D. Missouri, Eastern Division.
September 30, 2002.
*1042 Jeffrey J. Bunten, St. Louis, MO, for plaintiff.
Joseph B. Moore, Claire M. Schenk, Office of U.S. Atty., St. Louis, MO, for defendant.

MEMORANDUM
NOCE, United States Magistrate Judge.
This action is before the court for review of the final decision of the Commissioner of Social Security denying child's supplemental security income benefits under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381, et seq.
Plaintiff Shanae Weatherspoon, through her mother, filed an application for child's supplemental security income (SSI) benefits based on disability under Title XVI of the Act. (Tr. 318-19.) The Commissioner determined that plaintiff was disabled with an onset date of May 1, 1994, based on the impairments of learning disability, attention deficit hyperactivity disorder (ADHD), and borderline intellectual functioning. (Tr. 12.)
Following changes in the Act in Public Law 104-193, plaintiff's disability status was redetermined and she was found to be no longer disabled as of March 15, 1998. (Tr. 304-08.) After filing requests for reconsideration, a hearing was held with a disability hearing officer, who determined that plaintiff was no longer disabled as of March 15, 1998. (Tr. 291-97.)
*1043 On September 29, 1999, following a hearing, an administrative law judge (ALJ) also decided that plaintiff was not disabled under the Act. (Tr. 12-26.) On February 23, 2001, the Appeals Council denied plaintiff's request for review. (Tr. 2-3.) Thus, the decision of the ALJ stands as the final decision of the defendant Commissioner.

Administrative record
The record before the ALJ included the Disability Hearing Officer's Report of Disability Hearing (Tr. 320-31); the reconsideration request and reports by plaintiff's mother (Tr. 332-68); a written statement by her grandmother (Tr. 352); the Special School District Individualized Education Programs (IEP) and Annual Placement Recommendations for plaintiff, dated May 20, 1998 (Tr. 369-77), and May 20, 1997 (Tr. 379-94); background school reports of April 1997 (Tr. 396-415); Teacher's Questionnaires (Tr. 378, 416-17); a school progress report, dated December 18, 1997 (Tr. 418-23); a letter suspending plaintiff from school for three school days in September 1997 (Tr. 424); the December 22, 1997, report of plaintiff's treating psychiatrist, Engin A. Taysi, M.D. (Tr. 429-34); a negative school conduct report dated November 19, 1998 (Tr. 436-41); the treating psychiatrist's functional assessment, dated January 25, 1999 (Tr. 445-48); a January 29, 1999, teacher's letter (Tr. 449); the report of plaintiff's grades during the 1998-99 school year (Tr. 451); and the testimony of plaintiff and her mother before the ALJ on January 22, 1999 (Tr. 42-83).

Legal Standards
The court must affirm findings of the ALJ that are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). Generally, substantial evidence is evidence which a reasonable person would accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir.1993). A reviewing court may not make its own findings of fact or substitute its judgment for that of the Commissioner. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir.1986). An administrative decision is not subject to reversal merely because substantial evidence exists which supports the opposite conclusion. Gaddis v. Chater, 76 F.3d 893, 895 (8th Cir.1996). Nevertheless, when the court reviews the record for substantial evidence, it must review the entire record and consider whatever detracts from the evidence which supports the ALJ's decision. Piercy v. Bowen, 835 F.2d 190, 191 (8th Cir.1987).
The Act provides in relevant part:
An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
42 U.S.C. § 1382c(a)(3)(C)(i) (1996).
Applying the Act and the applicable regulations in plaintiff's case, the ALJ engaged in a three-step analysis. See Carballo v. Apfel, 34 F.Supp.2d 208, 216 (S.D.N.Y.1999). First, the ALJ found that Shanae had never engaged in substantial gainful activity and proceeded to step two. See 20 C.F.R. § 416.924(a), (c).
In step two, the ALJ determined that Shanae suffered from dysthymia,[1] oppositional defiant disorder, attention deficit disorder, and borderline range of intellectual *1044 functioning, all of which the ALJ found were "severe" under 20 C.F.R. § 416.924(c).[2] (Tr. 25). That brought the ALJ to step three.
In step three, the ALJ determined that plaintiff's impairments, singly or in combination, did not meet or equal (medically or functionally) an impairment listed in the Commissioner's Listing of Impairments, 20 C.F.R., Ch. III, Pt. 404, Subpt. P, App. 1. (Tr. 25). See 20 C.F.R. § 416.924(d)(2).

Plaintiff's arguments
Plaintiff argues that (1) the ALJ did not properly evaluate her case under Listing § 112.05, Mental Retardation, and (2) the Appeals Council failed to properly evaluate, under a change in the applicable law (effective September 11, 2001), whether plaintiff's impairments were the functional equivalent of an impairment on the Commissioner's List of disabling impairments. The court has determined that the decision of the ALJ must be reversed under plaintiff's first argument and does not reach her second argument.

Listing § 112.05D
Plaintiff argues that the record is unequivocal that she meets the requirements of Listing § 112.05D, i.e.:
(1) a valid verbal, performance, or full scale IQ of 61-70;
(2) a physical or other mental impairment imposing additional and significant limitations in functioning; and
(3) deficits in adaptive functioning.
20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05D (2000).
Plaintiff was age 15 at the time of her hearing. By that time her IQ had been evaluated three times:
(1) in 1994: Verbal IQ 75, Performance IQ 91, Full Scale IQ 81;
(2) in April 1997: Verbal IQ 69, Performance IQ 80, Full Scale IQ 72; and
(3) in December 1997: Verbal IQ 72, Performance IQ 86, Full Scale IQ 77.
In his written decision, the ALJ did not accept the April 1997 IQ Verbal score of 69 as valid, because he believed it was a one-time low score, which was inconsistent with the levels of functioning reflected by the other IQ scores and plaintiff's academic performance. (Tr. 18.) He found that plaintiff was progressing in school, in regular classes. (Tr. 19.) The ALJ also found plaintiff was functioning in the borderline intellectual range. (Tr. 18.) The court concludes from the record that these findings are not supported by substantial evidence.
The IEP prepared by the Special School District on April 9, 1997, reflected problems in the intellectual, cognitive, academic, pre-academic, developmental, social, emotional, behavioral areas. (Tr. 397-99.) The Verbal IQ score of 69 came from the administration of a Wechsler Intelligence Scale for Children, Third Edition (WISC-III) on April 12, 1997. These scores indicated that plaintiff's verbal IQ was at the 2nd percentile, her performance IQ at the 9th percentile, and her full scale IQ score was at the 3rd percentile. (Tr. 400.) A Wechsler Individual Achievement Test (WIAT) was also administered. Plaintiff's reading score was at the 1st percentile, her math composite score was at the .4 percentile, and her writing composite was at the 1st percentile. (Tr. 401.)
At the time of the testing, plaintiff was 13 years-0 months old. (Tr. 401.) The WIAT scores reflected reading composite *1045 at 8 years-3 months, math composite at 8-3, and written composite at 7-6. (Tr. 401.) A Learning Behavior Report, dated April 8, 1997, reflected that plaintiff had difficulties with contextual cues, following written directions, understanding meanings, drawing conclusions, and making inferences. Plaintiff was believed to have problems in written expression, basic writing conventions, grammatical construction, short simple sentence structure, limited vocabulary, content vocabulary, contextual spelling, recognizing necessary parts of a sentence, and combining sentences into paragraphs. (Tr. 404.)
In math, plaintiff had difficulty with long division, decimals, fractions, computational errors, sequencing steps in a multi-step computation, word problems, identifying and using appropriate problem-solving strategies, and identifying the correct processes. (Tr. 405.)
Plaintiff also had difficulty remembering concepts, factual information over a long period of time, needed a great deal of repetition of directions and instruction, and often needed directions or instructions repeated. She had difficulty with abstract concepts, needed concrete examples, had difficulty understanding presented materials and difficulty with follow-through. (Tr. 406.)
An assessment of task-related behavior, dated April 8, 1997, reported that plaintiff had daily difficulty with organizing and appropriately using necessary work materials, organizing and appropriately using time, difficulty or reluctance in beginning tasks, difficulty staying with tasks, performance of school work in a careless manner, rushing through work, completing work at a failing level, requiring additional time to complete work, daydreaming or staring away from task, having difficulty changing activities, having difficulty working in a group setting and socializing at inappropriate times. Plaintiff hourly needed directions or lessons repeated and one-on-one instruction. These task-related behaviors were significantly related to the plaintiff's academic difficulties in reading, math, and written expression. (Tr. 407.)
It was reported that plaintiff, on a weekly basis, talked back, was physically aggressive and physically threatening towards her peers, verbally threatened other students, and was teased by other students. On a daily basis, she preferred one-on-one relationships, rather than group involvement, teased other students, responded inappropriately to comments from others, reacted inappropriately in competitive situations, and reacted inappropriately to the success of others. (Tr. 409.)
On a daily basis, plaintiff continued behaving in a manner no longer appropriate, engaged in unnecessary movements in and out of her seat, engaged in unnecessary movements in unstructured situations, demanded immediate response from others, denied inappropriate behaviors, blamed others for mistakes, and acted impulsively. (Tr. 410.)
Under the Commissioner's regulations, IQ scores must be sufficiently current for accurate assessment under Listing § 112.05. IQ scores, such as plaintiff's Verbal IQ score of 69, obtained between ages 7 and 16 are considered current for two years after testing, when the IQ is at 40 or above. See Listing § 112.00D10 (2000). Further, the reported information that accompanied the score indicated that it reflected plaintiff's then current behavior. See Tr. 411-12. Therefore, the ALJ's conclusion that the earlier IQ test scores above 70 provided a sufficient basis for discarding the IQ score of 69 is legally insufficient.
As plaintiff argues, the Commissioner's regulations recognize that testing and IQ scores will change over time. Regulations *1046 published after the ALJ's decision, relating to the assessment of mental impairments, 65 Fed.Reg. 54742 (September 11, 2000), provide:
We also clarified our longstanding policy that we may consider a child to have "marked" or "extreme" limitations with test scores that are slightly higher than levels we use to define those terms. However, we explain that we may also consider the converse; i.e., that a child with test scores that appear to be within the "marked" or "extreme" range may not have such limitations. We consider test scores in the context of all the evidence in the case record.
65 Fed.Reg. 54756. The court concludes that plaintiff satisfied the first prong of Listing § 112.05D.
The second prong of Listing § 112.05D requires that plaintiff establish a significant additional mental or physical impairment that imposes an additional and significant limitation of function. Plaintiff sustained this burden by proof of her impairments which the ALJ determined were "more than slight abnormalities and cause more than minimal functional limitations." (Tr. 16.) The additional impairment need not be disabling in and of itself but need only result in a significant limitation of function to satisfy the adult standard. Rucker v. Apfel, 141 F.3d 1256, 1260 (8th Cir.1998).
The ALJ found that plaintiff had a marked limitation in functioning in concentration, persistence, and pace. (Tr. 24.) The ALJ accepted the report of the non-examining state agency psychological expert who made this finding. (Tr. 24-25.) Supporting this conclusion also are the opinions of Dr. Taysi, plaintiff's treating psychiatrist. (Tr. 25.) Dr. Taysi indicated that plaintiff responds to supervision, redirection, structure, and needs constant supervision by the adults. Plaintiff had behavioral problems with fighting, discipline, uncooperation, and not knowing how to deal with anger. Plaintiff's diagnoses were dysthymia, ODD (opposition defiant disorder), ADHD, and borderline intelligence (rule out learning disabilities from school). (Tr. 429.)
Dr. Taysi also completed a Child's Functional Assessment, which indicated a marked level of impairment in concentration, persistence and pace. (Tr. 446.) In a January 5, 1999 note, Dr. Taysi indicated that plaintiff had gotten into trouble at school and had been suspended due to behavioral problems. (Tr. 448.) Plaintiff was doing better academically but no changes had been made to her medication, Risperdal and Effexor. (Tr. 448). A statement from plaintiff's science teacher reflected that plaintiff had been moved, effective February 1, 1999, to a smaller class setting for science so that plaintiff would not be subject to the various distractions that occurred in her class. The science teacher indicated that the plaintiff needed a different classroom structure to prepare her for the high school years. (Tr. 449.)
Plaintiff's progress reports reflect difficulty with academics (Tr. 418-19, 423, 451) and numerous behavioral difficulties with suspensions and detentions (Tr. 420-22, 424, 436-37, 438, 440-41).
Finally, the deficits in behavior, cognition, and concentration meet the third prong of Listing § 112.05D, i.e., deficits in adaptive functioning.

Listing § 112.05E2
Plaintiff argues that the ALJ did not properly evaluate her impairments under Listing § 112.05E2. The court agrees. The requirements for that Listing are (1) a valid verbal, performance, or full scale IQ between 60 and 70; (2) for children between three and eighteen years of age, marked impairment in age appropriate social functioning, under Listing *1047 § 112.02B2b, or marked difficulties in maintaining concentration, persistence and pace resulting in frequent failure to complete tests in a timely manner, under Listing § 112.02B2d; and (3) deficits in adaptive functioning. See 20 C.F.R., Ch. III, Pt. 404, Subpt. P., App. 1, § 112.05E2 (2000).
As discussed above, one of plaintiff's IQ scores was within the 61-70 range. Regarding the second requirement, the substantial evidence of record, including the opinions of Dr. Taysi and the other non-examining doctors, is unequivocal that plaintiff has a marked level of impairment in concentration, persistence, and pace. (Tr. 300, 446.) And the ALJ so found. (Tr. 24-25.) Finally, as set forth above, plaintiff meets the third component of Listing § 112.05E2, because the record is unequivocal that plaintiff has deficits in adaptive functioning.
Defendant argues that plaintiff has not met the requirements of Listing § 112.05, because she has not been diagnosed with mental retardation with deficits of adaptive functioning. For the definition of such diagnosis, defendant looks to the Diagnostic and Statistical Manual of Mental Disorders-IV. For a diagnosis of mental retardation, the DSM-IV requires both
significantly subaverage intellectual functioning (an IQ of approximately 70 or below) with onset before age 18 years and concurrent deficits or impairments in adaptive functioning.
DSM-IV at 39 (2000). The DSM-IV explains that adaptive functioning
refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting.
Id. at 42.
The standard for consideration of IQ scores under the DSM-IV is not a rigid one. Under the DSM-IV, there is a five-point range of error when using IQ scores in the diagnosis of mental retardation. Id. at 41.
Thus, it is possible to diagnose Mental Retardation in individuals with IQs between 70 and 75 who exhibit significant deficits in adaptive behavior. Conversely, Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning.
Id. at 41-42. The record clearly indicates three IQ scores for plaintiff under 75 during 1997. The record also clearly establishes plaintiff's impairments in adaptive functioning.
Defendant also argues that plaintiff fails to meet the second prong of the mental retardation listing that she have a physical or other mental impairment imposing an "additional and significant limitation of function." 20 C.F.R., Ch. III, Pt. 404, Subpt. P, App. 1, § 112.05D. "Significant" under § 12.05C (the adult equivalent of § 112.05D) involves something "more than slight or minimal." See Sird v. Chater, 105 F.3d 401, 403 (8th Cir.1997).
Defendant argues that, while the ALJ found that plaintiff had a "marked" impairment in the concentration, persistence, or pace domain, he also noted that she was being treated for ADHD. (Tr. 24.) Plaintiff's concentration and behavior problems strongly impacted her school work. (Tr. 411.) Dr. Taysi stated that the effects of plaintiff's medication were fair and that she was doing better academically in spite of her being suspended from school for behavior problems. (Tr. 446, 448.) In addition, plaintiff's teachers stated that she was able to work better in small settings, in close proximity to the teacher, or in a structured and routine environment. (Tr. 371, 378, 381, 389.) Contrary to defendant's *1048 arguments, these assessments are not those of a person who is significantly improving, but indicate additional measures necessary to continue plaintiff's difficult educational process.
For these reasons, the court concludes that the final decision of the defendant Commissioner of Social Security is not supported by substantial evidence on the record. The Commissioner's decision is reversed under Sentence Four of 42 U.S.C. § 405(g) and the action is remanded to the Commissioner for the award of benefits as claimed. An appropriate Judgment Order is issued herewith.

JUDGMENT ORDER
In accordance with the Memorandum filed herewith,
IT IS HEREBY ORDERED that the final decision of the defendant Commissioner of Social Security is reversed under Sentence Four of 42 U.S.C. § 405(g) and the action is remanded to the Commissioner for the award of benefits as claimed.
NOTES
[1] Dysthymia is a depressed mood disorder. Diagnostic and Statistical Manual of Mental Disorders, § 300.4, at 376 (American Psychiatric Assn., 4th ed., text rev.) (DSM-IV).
[2] The regulations provide that an impairment is not "severe" if the impairment is "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c)(2000).